UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| GARY BOATMAN, substituted for MARIEANNA BOATMAN, Deceased (Social Security No. XXX-XX-4197),<br><br>               Plaintiff,<br><br>   v.<br><br>LINDA S. McMAHON, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>               Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 3:05-cv-221-RLY-WGH |

**MEMORANDUM DECISION AND ORDER**

**I. Statement of the Case**

Plaintiff, Marieanna Boatman,[2] seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d), 1381(a); 20 C.F.R. § 404.1520(f). The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1]On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Plaintiff died on November 21, 2006, and her husband was substituted to proceed in plaintiff's request for benefits. (Docket No. 20).

Plaintiff applied for DIB and SSI on June 27, 2003, alleging disability since February 15, 2002. (R. 69-71, 301-03). The agency denied Plaintiff's application both initially and on reconsideration. (R. 31-35, 296-300, 309-10). Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on December 16, 2004. (R. 342-69). Plaintiff was represented at the hearing by her attorney, J. Michael Woods. (R. 342). Also testifying was a vocational expert ("VE"). The ALJ issued a decision on April 19, 2005, finding that Plaintiff was not disabled because she retained the residual functional capacity to perform a significant number of jobs in the regional economy. (R. 17-28). Plaintiff filed a request for review with the Appeals Council, and the ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review on December 5, 2005. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed her Complaint on December 20, 2005, seeking judicial review of the ALJ's decision.

## II.  Medical Evidence

On March 2, 2002, Plaintiff was examined by Gregory Ward, M.D. (R. 163-64). Plaintiff reported chronic obstructive pulmonary disease ("COPD") with severe exertional dyspnea with minimal amounts of activity. Plaintiff also reported severe osteoarthritis primarily involving her shoulders and hips with significant pain, stiffness, and decreased range of motion which impacted her ability to lift. Plaintiff smoked two packs of cigarettes per day. Upon examination, Dr. Ward noted that Plaintiff's breath sounds were somewhat diminished, but did not appreciate evidence of crackles, wheezes, or rhonchi. (R. 163). Plaintiff exhibited no clubbing, cyanosis, or edema in her extremities. (R. 164). She had a

slightly antalgic gait without an assistive device, and she could walk on her heels and toes and squat with great difficulty. (R. 164). She demonstrated a significantly diminished range of motion in her shoulders due to pain. (R. 164). Plaintiff's muscle strength was 5/5 in the upper extremities and 4/5 in the lower extremities. Her deep tendon reflexes were normal, equal and symmetric throughout. Fine finger manipulation was normal. (R. 164).

On March 22, 2002, Plaintiff underwent a mental status evaluation with Albert H. Fink, Ph.D, at the request of DDS. (R. 166-70). Plaintiff reported a history of alcohol and street drug use. At the time of the examination, she was drinking only occasionally and had not used street drugs for several years. (R. 166). Upon examination, Plaintiff was alert and oriented; however, she exhibited depressed mood, flat affect, and little enthusiasm or energy with a tendency to speak slowly. Dr. Fink observed Plaintiff's gait and coordination to be normal. (R. 166). Dr. Fink diagnosed depressive disorder, not otherwise specified, alcohol dependence, nicotine dependence, a history of hallucinogen abuse, and assigned a Global Assessment of Functioning ("GAF") score of 60. (R. 168).

On April 12, 2002, W. Shipley, Ph.D., a state agency psychologist, reviewed the medical evidence of record and opined that Plaintiff did not have a severe mental impairment and that she had only mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and had no episodes of decompensation. (R. 156-59).

In March 2003, x-rays of Plaintiff's chest showed that her lungs were hyper-expanded, compatible with COPD, but her condition was stable. (R. 196, 270).

On June 2, 2003, Plaintiff presented to the emergency room with difficulty breathing, at which time she was diagnosed with acute bronchitis. Plaintiff sought emergency room treatment again on June 5, 2003, due to cough and pain on her left side. (R. 169). Plaintiff exhibited diminished breath sounds and wheezes throughout her chest. Plaintiff was provided a nebulizer and prescribed Albuterol, Levaquin, and Darvocet. (R. 170).

Plaintiff was examined by Randall L. Oliver, M.D., on August 18, 2003. (R. 231-34). Plaintiff reported daily pain which she treated with a heat pad, hot showers, and Vioxx. (R. 231-34). Plaintiff stated that when she experienced shortness of breath, it lasted 5-10 minutes after starting nebulizer treatment. Plaintiff complained of joint pain, particularly in her neck, shoulders, fingers, and hips and alleged that she could stand only 30 minutes at a time, walk 1-1/2 blocks, climb 5 stairs, and lift 5 pounds. (R. 231-32). Upon examination, Plaintiff exhibited no prolonged expiration and no use of accessory muscles. She had no edema in her extremities. (R. 233). Dr. Oliver noted that Plaintiff exhibited a normal gait, and her joint examination was normal. Plaintiff had normal muscle strength at 5/5 globally, normal grip strength at 5/5 bilaterally, and normal sensory findings, although her fine finger manipulative abilities were noted to be poor. (R. 234).

In September 2003, Plaintiff's pulmonary function studies revealed an FEV1 of 1.94 pre-bronchodilator and 2.17 post-bronchodilator, which was 77% of predicted values. (R. 243).

On October 7, 2003, A. Landwehr, M.D., a state agency physician, reviewed the medical evidence of record and opined that Plaintiff could perform medium work which

required only occasional climbing, balancing, and crawling, and did not require concentrated exposure to environmental irritants. (R. 146-51).

On April 19, 2004, Plaintiff was prescribed Prednisone for acute bronchitis. (R. 264). A few days later, Plaintiff sought emergency room treatment due to chest pain and bronchitis. (R. 252). Plaintiff's stress test results were normal. (R. 256). X-rays of Plaintiff's chest showed no evidence of active infiltration or effusion. (R. 258).

On April 19, 2004, Edward M. Lagunzad, M.D., reported that Plaintiff had a chronic pulmonary condition with acute flare-ups of asthma and COPD, and he opined that she would likely experience degeneration of her general lung status due to continued smoking. (R. 294).

On July 6, 2004, Plaintiff reported dyspnea during the night as well as pain in her elbows, hips, knees, and shoulders. (R. 261-62). During pulmonary function studies in July 2004, Plaintiff had an FEV1 of 1.96, both pre- and post-bronchodilator. (R. 273-80). Thomas K. Browne, M.D., noted that Plaintiff's forced vital capacity was "borderline low" and that the FEV1 was only mildly decreased. Dr. Browne concluded that these findings were consistent with a mild ventilatory impairment that appeared to be primarily obstructive in nature. (R. 273).

On December 2, 2004, Dr. Lagunzad noted Plaintiff's reports of severe breathing difficulties with exertional dyspnea upon minimal physical activity. (R. 295). Dr. Lagunzad further noted that Plaintiff also suffered from debilitating joint pain due to osteoarthritis and had undergone steroid injections with little improvement. Dr. Lagunzad opined that Plaintiff could not stand or walk for any prolonged period of time due to her breathing disorder and

that, due to her combined conditions, she would be restricted to work which was sedentary in exertion. (R. 295).

On October 4, 2004, Plaintiff was evaluated by Kathy Hunt, a social worker, in conjunction with her application for Medicaid. (R. 291-92). Plaintiff reported a horrible childhood, with placement in various foster homes and an orphanage with intermittent returns to her mother who was an alcoholic. (R. 291). Plaintiff was diagnosed with dysthymic disorder and assigned a GAF of 45 (serious symptoms). (R. 292).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the Court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920.  The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ, George A. Mills III, concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 27).  The ALJ continued by finding that, in accordance with 20 C.F.R. § 416.920(b), Plaintiff had four impairments that are classified as severe:  COPD, osteoarthritis, mild obesity, and depressive disorder (NOS).  (R. 27).  The ALJ concluded that none of these impairments met or were substantially similar to any of the

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 27).  Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully credible.  (R. 28).  Consequently, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work.  (R. 28).  The ALJ determined that, because of these limitations, Plaintiff could not perform her past work.  (R. 28).  The ALJ went on to conclude that Plaintiff was able to perform some work; Plaintiff was "closely approaching advanced age" with a "limited" education, a semi-skilled work background, and no transferable skills.  Based on her limitations, she retained the residual functional capacity to perform a limited range of light work existing in substantial numbers in the regional economy.  (R. 28).  The ALJ concluded by finding that Plaintiff was not under a disability.  (R. 28).

### VI.  Issues

The Court concludes that Plaintiff has essentially raised three issues[3].  The issues are as follows:

    1.     Did the ALJ properly consider the evidence from Dr. Ward and Dr. Langunzad concerning Plaintiff's COPD?

    2.     Did the ALJ properly consider evidence of Plaintiff's mental impairment?

    3.     Did the ALJ fail to ask proper hypothetical questions to the VE?

---

[3]Plaintiff also alleges that the ALJ failed to consider the statement of Dr. Fink that "[t]he combination of [Plaintiff's physical impairments] would appear to significantly restrict [Plaintiff's] ability to function effectively in the workplace."  (R. 167).  However, Dr. Fink is a psychologist and there is no evidence that he conducted a physical examination of Plaintiff.  Thus, the ALJ's opinion did not have to take this statement into consideration.

**Issue 1:** Did the ALJ properly consider the evidence from Dr. Ward and Dr. Langunzad concerning Plaintiff's COPD?

Plaintiff's first argument is that the ALJ should have accepted the opinions of Dr. Ward and Dr. Langunzad that Plaintiff had severe breathing difficulties with exertional dyspnea upon minimal physical activity. Plaintiff is correct that opinions of a treating physician are generally entitled to controlling weight. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). However, an ALJ may reject the opinion of a treating physician if it is based on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent with other medical evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1177-1178 (7th Cir. 2001). In this case the medical record contains numerous objective medical tests that indicate a breathing impairment less severe than Dr. Ward and Dr. Langunzad found. Plaintiff's June 2, 2003 chest x-ray showed no acute pulmonary disease. (R. 188). Plaintiff's September 2003 pulmonary function studies showed FEV1 results that were 77% of predicted values. (R. 243). Dr. Oliver examined Plaintiff and found "no prolonged expiration, no chest deformity, no use of accessory muscles, and no adventitious sounds." (R. 233). Plaintiff's April 27, 2004 chest x-ray revealed no evidence of active infiltration or effusion. (R. 258). Dr. Browne examined Plaintiff's pulmonary function studies from 2004 and found a "mild ventilatory impairment." (R. 273). The Court concludes that, in light of this medical evidence, the ALJ's decision to discount the opinions of Dr. Lagunzad and Dr. Ward is supported by substantial evidence because a reasonable person could examine this evidence and come to the conclusion that Plaintiff's breathing impairment was less severe than Dr. Lagunzad and Dr. Ward found.

Because the ALJ's opinion concerning Plaintiff's breathing impairment is supported by substantial evidence, the ALJ's decision on this issue is affirmed.

**Issue 2:      Did the ALJ properly consider evidence of Plaintiff's mental impairment?**

Next, Plaintiff argues that the ALJ failed to take into consideration the opinions of Kathy Hunt who assessed a GAF of 45. However, Ms. Hunt is not a doctor and her assessment is not supported by substantial evidence. Dr. Fink examined Plaintiff on March 22, 2002, and opined that Plaintiff's GAF was 60 (indicating mild mental impairment). (R. 166). The ALJ's decision to reject the findings of Ms. Hunt while accepting the findings of Dr. Fink was proper and must be affirmed.

**Issue 3:      Did the ALJ fail to ask proper hypothetical questions to the VE?**

Plaintiff's final argument is that the ALJ "granted significant weight" to the opinion of Dr. Oliver but failed to address Dr. Oliver's findings concerning Plaintiff's fine finger manipulation. Plaintiff clearly raised the issue of her hands to the ALJ at her administrative hearing. (R. 356). And, the ALJ acknowledged Plaintiff's claim of "stiffness in her hands" in his opinion. (R. 25). However, despite the ALJ's decision to grant significant weight to Dr. Oliver's opinion, part of which contains a finding that "fine finger manipulative abilities are poor," the ALJ failed to ask the VE any hypothetical questions concerning this impairment. An ALJ must pose hypothetical questions to the VE that "fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994).

The inclusion of the Plaintiff's ability to perform "fine finger manipulation" seems to be important in this case because of the type of positions the VE testified exist for the Plaintiff

to perform. The jobs identified included "packer (1500 jobs), inspector (1200 jobs), and miscellaneous assembler (1800 jobs)" (R. 367) – all jobs which would appear to require at least some degree of use of the hands. Without a clear hypothetical question to the VE including the fine finger manipulation limitation, the ALJ's question did not "fully set forth" her impairments.

In light of the fact that the ALJ failed to ask a complete hypothetical question, this case must be remanded. The ALJ must either: (1) provide an explanation for why he gave "significant weight" to the opinion of Dr. Oliver but ignored his finding of poor fine finger manipulation, or (2) ask a proper hypothetical question to the VE that includes poor fine finger manipulation.

### VII.  Conclusion

The ALJ's decision is, therefore, **REMANDED** for the limited purpose of addressing the Plaintiff's fine finger manipulation condition and how that condition affects the range of jobs Plaintiff may otherwise be able to perform.

**SO ORDERED.**

**Dated:** 2/26/07

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

**Electronic copies to:**

J. Michael Woods
WOODS & WOODS
mwoods@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov